And the case number is 513-0356. Council, ready to proceed? This is a, I believe we only have, we have a waiver on one side, it's only a 20 minute order. I believe not. I'm sorry? I believe not. And wait for it. Thank you. You may proceed. May it please the court, my name is Kara Jones. I'm representing Southern Ill. Hospital Services. This case is an appeal of an order fining the hospital of an attempt for failing to disclose documents ordered by the court in discovery. Plaintiff's complaint in this case alleges medical negligence on the part of Dr. Dressen, who's represented by other council, and negligent prevention in claims against Southern Ill. Hospital Services. Plaintiff served written discovery requesting the hospital's peer review and credentialing documents regarding Dr. Dressen. SIHS claimed a privilege to some of the documents that were responsive to the discovery. Plaintiff filed a motion to compel. We submitted the documents under, in camera for the court's review. The documents presented to the trial court were in group exhibits A through O. But not F and J, right? But not F and J. Correct. The entire A through O was presented to the court, and the court ultimately held that all the documents that we presented to them were privileged, with the exceptions of group exhibits B, F, and J. We subsequently did produce the documents in group exhibit B, and we respectfully refused to produce the documents in F and J. We filed a motion to reconsider, which the court denied, and we asked the court to enter a friendly contempt so that we could appeal the issue at this time, as the court knows it's the only way to appeal a discovery order. Do you ask the trial judge to deduct part of the F or J or anything? Yes, Your Honor. All the documents we presented here in our appellate brief were presented to the trial court. We gave them the option of, we asked that either the entire document, specifically the applications, whether the, all the documents, we asked that all of the documents in group exhibit F, which are the doctor's applications, be held to be privileged. Alternatively, we presented the same arguments that parts of it should be redacted for various reasons, part of which is the language of the Credentialing Act, the New Data Collection Credentialing Act, as well as the Medical Studies Act, Physician for Safety. So all the arguments we've raised here, Your Honor, were presented to the trial court. The trial court did not make any ruling with regards to our request for specific redactions or limited privilege finding of those documents. The court simply ordered us to produce the whole thing without any real explanation as to the basis for this decision. Did the trial judge read F and J? Pardon? Did the trial judge read executes F and J? Did he read? Yes. Sir, we presented all of the documents to him, and I have no doubt that he read all of the documents. Okay. There was, you know, we find three of the record on appeal is, are all the documents, and it's quite a lengthy stack. So the trial judge went to, I'm positive that this judge looked through all of the documents. Quite a bit. With regards to our group exhibit F, which is the applications, I want to address one of the applications in particular first off, and that is the application that was submitted and signed on December 1, 2011. That has also included my other argument with regards to the Health Credential Data Act. But with regards to this particular application is also our position that that is not relevant and therefore not discoverable under Supreme Court Rule 201. Supreme Court Rule 201 basically makes two types of information to be considered relevant for discovery, and one is information admissible at trial and information that leads to admissible evidence. And whether the evidence meets either of those criteria is basically dependent on what the plaintiff's claims are. In this particular instance, he's claiming negligent credential, and the court in Frigo v. Silvercross Hospital Medical Center set forth the elements for such a claim, and those elements include proof that the hospital failed to meet the standard of reasonable care and the selection of a physician to be granted medical staff privileges, and that doctors' medical care is at issue in the underlying medical malpractice case, that the physician breached the applicable standard of care, and that the grant to negligent granting of medical staff privileges was the proximate cause of the plaintiff's injuries. In this particular case, the underlying medical malpractice case involves surgery that Dr. Dressen performed on the plaintiff in February of 2011. So the information that was available to the hospital prior to the surgery in February 2011 is the relevant evidence with regards to the negligent credentialing claim. The court, they have to, you know, the negligent credentialing claim is based upon the information the hospital had at or before the time of the negligent treatment as to whether they should or should not have granted him privileges. The application, so obviously the application submitted on February 19, 2009, and August 13, 2010, would be relevant to that inquiry. But the application submitted by the doctor on December 1st was 10 months after Dr. Dressen's treatment of the plaintiff in this case, and therefore it could not, what if any information is contained and there is not relevant to the negligent credentialing claim, because it's not information that was known or held by the hospital at the time of the negligent treatment. So we believe that with regards to that specific application, since it is not relevant, the trial court abused its discretion in ordering the hospital to reduce that particular application. With regards to the other two applications. So I'm assuming that was argued at the lower court level. Yes, Your Honor. With regards to the entirety of Group Exhibit F, which would include all three applications, it is our position that those documents are privileged and are to be held confidential under the Illinois Healthcare Professional Data Collection Act. That act created a council, a 13-panel council, which was to work with the Department of Public Health to develop a uniform application form for doctors to apply for original credentialing privileges and re-credentialing of privileges. It also mandated the use of the form that was created by the Illinois Department of Public Health for use by all hospitals. So it created a form that the hospitals have to use and also mandated a set cycle for re-credentialing. Section 410 ILCS 517-15H of that statute provides that the credentialing data or the application is confidential. And although the statute does not specifically state that the information obtained is inadmissible or non-disparable, it identifies information obtained as confidential. We've cited the court to a case of TTX Company v. Whitley, 295 LF 3548. It's cited in the brief. In that case, the court was interpreting a tax statute which provided that the tax information was confidential, but the statute didn't say it was also non-discoverable or inadmissible. But the court concluded that the information was inadmissible and non-discoverable. So in essence, by the legislature finding that the application is confidential, it cannot be disclosed and it is inadmissible to try. Furthermore, the form itself that was created by the Illinois Department of Health specifically identifies sections that states are confidential. In the heading, it says confidential. So not only the language of the act, but the form that was created itself establishes the confidentiality of the form and sections of the form. We did acknowledge to the trial court and we acknowledge to this court that the Illinois Courts Health, the appellate court has already held that the Medical Studies Act does not protect applications. But those cases were decided before the Uniform Data Collection Act was enacted and was decided under the Medical Studies Act, not the act that we are requesting this court to rule on. So pursuant to the language of the Illinois Health Care Professional Data Collection Act, it is our position that all of the applications that were submitted by the doctor for credentialing are confidential and privileged and the court has used its discretion in ordering the hospital to produce those. Alternatively, we of course presented alternative arguments with regards to sections of the application, specifically sections dealing where the doctor disclosed information obtained by the hospital through the peer review process of an external peer review that was performed. It is our position that any references to the Greeley Report, which is the report that was performed by this exterior peer review company, are privileged under the Medical Studies Act. The Medical Studies Act protects documents that are generated specifically for the use of peer review committee and documents that are initiated, created, prepared, or generated by a peer review committee. The evidence we presented at the trial court throughout the payments established that that Greeley Report was generated at the request as part of a focused practice evaluation by the MSQOC, which is the Medical Studies Quality Oversight Committee, and it is a standing committee of the hospital. The peer review committee forwarded this matter to that committee, peer review committee being another standing committee, forwarded it to the MSQOC, who then forwarded the exterior peer review and the results were submitted to the committee. And although those results were ultimately given to, the report was ultimately given to Dr. Dressen, the case law establishes that documents are protected even if they are subsequently disseminated outside the peer review process. That's the case of Webb versus Mount Sinai Hospital Medical Center, which is cited in our brief. So we would ask that if this court finds that the entire application are not privileged, that any references that the doctor made to the Greeley Company or information with regards that was contained in their report be redacted as it is privileged under the Medical Studies Act. Also, Dr. Dressen has included information that was reported to the National Practitioner's Data Bank within his applications. Once again, the Health Care Quality Improvement Act of 1986, specifically Section 42 U.S.C. 11137, provides for information that's reported to the National Practitioner's Data Bank to be confidential and cannot be disclosed except to hospitals for credentialing purposes. So any information that he provides or any reference to documentation or information contained in the National Practitioner's Data Bank is privileged, and we'd ask that if the entire application were not privileged, or if this court finds that they're not privileged, that we be allowed to redact that information. The final information we ask to be redacted is information of health information or care and treatment and other individuals who are identified in Dr. Dressen's application is our position that those, any reference to detailed record or reference to medical care that Dr. Dressen provided to other patients that are not part of this lawsuit is privileged under HIPAA. And the claimant did not have a brief in this case, right? Correct, Your Honor. Would you like your motion for reconsider or anything? Was the plaintiff's attorney there for your motion during that? Your Honor, oral arguments were never held in the trial court, but the plaintiff's attorney did submit written responses to my motion. In essence, his written response was cited to the Medical Studies Act and general case law. Obviously, the plaintiff's attorney is not privy to the documents that I'm talking about because we didn't produce them, and we've inserted the privilege. So, he could not present really any specific arguments about a specific document because he could not see it. Finally, with regards to the applications, there are questions with regards to Dr. Dressen's own health status, which is not relevant to this matter, does not place his health condition at issue. And the case law is clear that information regarding a doctor's physical and mental health is nondiscoverable in a medical health crisis case. I want to briefly discuss Group Exhibit J. Group Exhibit J were procedure summaries and case histories that were generated for the use of the credentialing committee. During the repredention process, and there's affidavits to this effect, Your Honor, the hospital acquires the same information they would acquire during the initial credentialing process, which would include the application, references, claims history, the information from the National Practitioner Data Bank. All the information that is generated in the original application is, again, requested and obtained in the repredention process. In addition, since the doctor now has a history and has a body of work at the hospital, they generate and request procedure summaries and case histories of information with regards to the care and treatment of patients that he's had, surgical procedures that he's performed at the hospital during that time period. These reports and documents are generated for the use only of the committees, standing committees, the MSQOC and the credentialing committee and are used by the committees in the process of the repredention. Once again, the documents generated specifically for use of the peer review committee are protected under the Medical Studies Act, and the case law is that if the document was initiated, created, prepared, or generated by a peer review committee, the Medical Studies Act provides a privilege for those documents. Affidavits we submitted clearly support the privilege in this case as being created for the use of standing committees of the hospital, and all of those documents are contained in Group Exhibit J. So pursuant to the Medical Studies Act, it is our position that the trial court err in abuser's discretion in ordering us to produce documents that are clearly part of the peer review process and generated for the use of the peer review process. Finally, with regards to the finding of contempt, we are asking that this court vacate the finding of contempt and the fine that was issued. Obviously, the case law provides that if the discovery order is improper, the finding of contempt must be reversed. But as this court knows, requesting the trial court to enter a contempt order is a proper procedure to seek immediate appeal of a trial court's discovery order, and where the refusal to tender the requested documents is made in good faith based upon sound legal arguments and not contemptuous of the trial court's authority, it is appropriate for the court to vacate the contempt order, and I cite several cases for that proposition in our brief, Your Honors. As the hospital sought the finding of contempt in order to seek an immediate appeal of the trial court's ruling on documents, it feels very strongly our privilege under the case law. We've cited appropriate case law and statutory authority to support our assertion of those privileges. We did not intend to be contemptuous of the trial court's ruling, but believe that these issues, especially the issue with regards to the Data Collection Act statute, which has never been interpreted in this context, were appropriate for a contempt citation so that we could obtain a ruling from this court. So we would ask that even if the court should find that the trial court's ruling was correct, that the finding of contempt and monetary fine be vacated. Thank you, counsel. The case will be taken under advisement.